407 F.2d 937
 Russell FORD
v.
The BOARD OF MANAGERS OF the NEW JERSEY STATE PRISON; Lloyd W. McCorkle, Commissioner of Institutions & Agencies of the State of New Jersey; and Howard Yeager, Principal Keeper of the New Jersey State Prison at Trenton, New Jersey.
Russell Ford, Appellant in No. 17364, Dennis E. Gilyard, No. 38937, Appellant in No. 17365, and George C. Riley, No. 44439, Appellant in No. 17366.
 Nos. 17364-17366.
 United States Court of Appeals Third Circuit.
 Submitted on Briefs January 6, 1969.
 Decided February 12, 1969.
 
 Appellant in 17364: Russell Ford, pro se.
 Appellant in 17365: Dennis E. Gilyard, pro se.
 Appellant in 17366: George C. Riley, pro se.
 Eugene T. Urbaniak, Deputy Atty. Gen., Dept. of Institutions and Agencies, Trenton, N.J., for appellees (Arthur J. Sills, Atty. Gen. of New Jersey, on the brief).
 Before BIGGS, FORMAN and FREEDMAN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 The appellant, Russell Ford, at the time an inmate of the New Jersey State Prison at Trenton[1] brought this action under the authority of 42 U.S.C. §§ 1981[2] and 1983[3] alleging that the named defendants, the Board of Managers of the New Jersey State Prison, Lloyd McCorkle, Commissioner of Institutions & Agencies of the State of New Jersey and Howard Yeager, Principal Keeper of the New Jersey State Prison at Trenton, were subjecting him and other state prisoners to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
 
 
 2
 The suit was denominated in the complaint as a class action brought on behalf of all New Jersey prisoners similarly situated, presumably on the theory that they are exposed to like deprivations associated with solitary confinement. The complaint sought declaratory and injunctive relief as well as certain reforms in the practices attendant upon the administration of solitary confinement.
 
 
 3
 More particularly, appellant Ford alleged that he had been confined in solitary from August 26 to August 31, 1967, as well as on previous occasions, in Wing 1-Left of the New Jersey State Prison at Trenton. While so situated, he was allegedly compelled to exist under the conditions set forth in paragraphs 9 and 10 of the complaint:
 
 
 4
 "9. None of the solitary confinement cells have wash bowls or running water nor is water for sanitary purposes provided so that plaintiff, during his recent confinement * * * was unable to wash before eating or to maintain himself hygenically [sic] in any way. Since a shower is permitted only every fifth day, at the caprice of the officer in charge who being poorly supervised is often too lazy to attend to these matters, plaintiff did not receive a shower. Neither was the cell itself cleaned and at all times there is a pervasive stench. An old mattress with a clean cover on a cement shelf is provided for bedding.
 
 
 5
 "10. While confined solitarily * * * plaintiff was permitted 4 slices of bread and a pint of water 3 times daily and one `full' meal every third day. The so-called full meal may be scanty depending upon the menu for the day. Therefore, deprivation of food to the detriment of the prisoner's health is employed as a punitive measure."
 
 
 6
 Additionally, it is contended in a rather conclusory fashion that appellant was placed in solitary confinement as a punitive measure for threatening to bring suit if conditions in solitary were not changed.[4] Although other purported abuses are set forth in the complaint, it appears that neither the appellant Ford nor the other appellants to be mentioned herein have been exposed to same.[5]
 
 
 7
 Subsequently, a fellow prisoner, Robert J. Urbano,[6] moved to intervene, offering as reasons, among others, that Ford would soon be released from the New Jersey State Prison at Trenton to meet a detainer filed against him by the authorities of the State of Connecticut and thus a new action would be required. Moreover, Urbano contended:
 
 
 8
 "My interest is not adequately protected by Plaintiff Ford in that Ford has little or no knowledge of legal matters or procedure, whereas I do."
 
 
 9
 Two other prisoners, George C. Riley and Dennis E. Gilyard, joined in Urbano's motion for intervention for the reasons set forth by Urbano.
 
 
 10
 Meanwhile the Attorney General of New Jersey, on behalf of all of the defendants, moved to dismiss the complaint or for the entry of summary judgment in favor of the defendants. The District Court considered the motion on the basis of the pleadings and voluminous affidavits filed on behalf of the respective parties. In a thorough, well-reasoned opinion,[7] it concluded that although "[t]he right to be free from cruel and unusual punishment is one of the rights that a state prisoner may, in a proper case, enforce under Section 1983 of the Civil Rights Act," the appellants in this case had not shown that they had been "subjected to such punishment as the Eighth Amendment forbids." Appellees' motion for summary judgment was thus granted. In also holding that a class action was not the proper vehicle for challenging disciplinary action where the circumstances surrounding the imposition of punishment varied according to the individual case, the District Court denied as futile the motions for intervention. Thereupon Ford, Gilyard and Riley took this appeal.[8]
 
 
 11
 Appellants argue that the District Court erred in granting appellees' motion for summary judgment, in holding that the instant suit was not a proper class action and in denying the motions for intervention. Disregarding any implications of mootness of the issues raised by Ford's complaint by reason of his transfer to Connecticut, and accepting as true all of the factual allegations in the complaint, excluding those which are merely conclusory, suffice it to say that no cause of action is stated under the Civil Rights Act or the Eighth and Fourteenth Amendments. As was stated in Gurczynski v. Yeager:
 
 
 12
 "Discipline reasonably maintained in those [New Jersey] prisons is not under the supervisory direction of the federal courts. * * * There is nothing in the circumstances related to indicate any reasonable basis for interference with the state authority, even though appellant's claim is under the guise of violation of his constitutional rights."[9]
 
 
 13
 None of the circumstances here revealed even remotely approximate the barbaric conditions found to constitute cruel and unusual punishment in Wright v. McMann[10] and Jordan v. Fitzharris.[11] Solitary confinement in and of itself does not violate Eighth Amendment prohibitions,[12] and the temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief. In light of this disposition of the case, appellants' other arguments, such as the right to intervention, the propriety of the suit as a class action and summary judgment, fall of their own weight.
 
 
 14
 The order of the United States District Court for the District of New Jersey of April 30, 1968, entering judgment in favor of the appellees will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 He has since been transferred under a detainer to the Connecticut State Prison
 
 
 [2]
 "§ 1981. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."
 
 
 [3]
 "§ 1983. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [4]
 It is to be noted, however, that Ford does not deny that he had threatened to "blow up the Institution" and had made certain derogatory remarks about an officer, and that these were at least the ostensible reasons for his being placed in solitary
 
 
 [5]
 Included are allegations that the "4 wing" of the prison has been condemned on several occasions as being "unfit for human habitation," that mentally disturbed prisoners are placed in isolation to undergo "observation," and that none of the prisoner complaints with respect to these matters had been given any consideration by the responsible officials
 
 
 [6]
 Ford had filed a motion that Urbano should be joined as a party plaintiff, alleging him to be indispensable to his action. The District Court denied the motion on the ground that there was no showing that Urbano was an indispensable party
 
 
 [7]
 Ford v. Board of Managers of the New Jersey State Prison, Civil No. 946-67, D.N.J., April 30, 1968
 
 
 [8]
 Urbano did not appeal
 
 
 [9]
 339 F.2d 884, 884-885 (3 Cir. 1964). See Negrich v. Hohn, 379 F.2d 213 (3 Cir. 1967); United States ex rel. Knight v. Ragen, 337 F.2d 425 (7 Cir. 1964),cert. denied, 380 U.S. 985, 85 S.Ct. 1355, 14 L.Ed.2d 277 (1965); Kostal v. Tinsley, 337 F.2d 845 (10 Cir. 1964), cert. denied, 380 U.S. 985, 85 S.Ct. 1354, 14 L.Ed.2d 277 (1965); Childs v. Pegelow, 321 F.2d 487 (4 Cir. 1963), cert. denied, 376 U.S. 932, 84 S.Ct. 702, 11 L.Ed.2d 652 (1964).
 
 
 [10]
 387 F.2d 519 (2 Cir. 1967)
 
 
 [11]
 257 F.Supp. 674 (N.D.Cal.1966)
 
 
 [12]
 E. g., Graham v. Willingham, 265 F. Supp. 763 (D.Kan.) aff'd, 384 F.2d 367 (10 Cir. 1967); Roberts v. Barbosa, 227 F.Supp. 20 (S.D.Cal.1964).